# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: WORLD IMPORTS, LTD., : <br> : <br> Debtor. : <br> _____ : <br> FUJIAN ZHANGZHOU FOREIGN : <br> TRADE CO., LTD., : <br> : <br> and, : <br> : <br> HAINING WANSHENG SOFA CO., : <br> LTD., : <br> : <br> Appellants, : <br> : <br> v. : <br> : <br> WORLD IMPORTS, LTD., : <br> : <br> Appellee. : | CIVIL ACTION NO. 14-4920 <br><br> BANKRUPTCY NO. 13-15929 |

## MEMORANDUM

**Tucker, C. J.**                                                                                                 **January _19_, 2016**

      Currently before the Court is a Certificate of Appeal from a June 18, 2014 Order entered by the Honorable Stephen Raslavich, United States Bankruptcy Judge for the Eastern District of Pennsylvania (Doc. 1), denying two Motions for Allowance and Payment of Administrative Expense Claims filed by Appellants Fujian Zhangzhou Foreign Trade Co, Ltd. ("Fujian") and Haining Wansheng Sofa Co., Ltd. ("Haining") (collectively, "Appellants"). Upon consideration of the parties' briefs and exhibits, this Court affirms the judgment of the Bankruptcy Court.

## I.     BACKGROUND

      On July 3, 2013, World Imports, Ltd. ("Appellee") petitioned for relief under Chapter 11 of the Bankruptcy Reform Act, 11 U.S.C. §1101, in the United States Bankruptcy Court for the Eastern District of Pennsylvania ("Bankruptcy Court"). Appellants are claimants in Appellee's

bankruptcy filing, having each filed a Motion for Allowance and Payment of Administrative Expense Claims pursuant to 11 U.S.C. § 503(b)(9) on October 23, 2014.[1]

The facts underlying this appeal are not in dispute, as the parties submitted this matter to the Bankruptcy Court on stipulations of fact which are part of the Designated Record on Appeal (Bankruptcy No. 13-15929, Doc. 280, Ex. A, B). It is settled that vendors Fujian and Haining sold goods to debtor World Imports, Ltd. in the ordinary course of business. The operative dates of the sale are not in dispute.[2] The parties also agree that the goods were shipped "FOB" or "free on board" from the port of origin. The sole question before the Bankruptcy Court was whether Appellee received the goods from Appellants within twenty (20) days prior to the bankruptcy filing, thereby qualifying for administrative expense priority pursuant to 11 U.S.C. § 503(b)(9). The parties disagree on this point because Appellants shipped the goods from China more than 20 days before the July 3, 2013 bankruptcy filing, but Appellee took physical possession of the goods in the United States fewer than 20 days before the bankruptcy filing. Because the Bankruptcy Code does not define the word "receive," the Bankruptcy Court was tasked with determining whether the authority controlling the definition of "receive" in this context is international commercial law or non-bankruptcy state law. The parties agree that this appears to be a case of first impression, as neither party could locate a decision on point.

---

[1] The Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of [Title 11], including—the value of any goods received by the debtor within 20 days before the date of commencement of a case under [Title 11] in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9).

[2] As to the Haining claim, the goods were shipped from Shanghai on May 26, 2013 and Appellee took physical possession of the goods in the United States on June 21, 2013. As to the Fujian claim, the goods were shipped from Xiamen on May 17, May 31, and June 7, 2013. As to the exact date that Appellee (or its customers) took physical possession of the subject goods in the United States, the record is unclear. However, the parties appear to agree that this occurred within 20 days prior to bankruptcy.

The Bankruptcy Court found that the goods in question were received on the shipment date. Since this was more than 20 days before the bankruptcy filing, the court found that Appellants' claims were not entitled to administrative expense priority status. Though the court found that international trade law was the controlling authority, it noted that state law may provide a rule of decision for the gaps in federal statues so long as the state law does not contravene an established federal law. U.S. Const. Art. VI cl. 2; see Malley-Duff & Assoc., Inc. v. Crown Life Insur. Co., 792 F.2d 341, 346 (3d Cir. 1986) ("If federal law is both pertinent and valid, it applies because the supremacy clause of the Constitution so commands.") However, because federal law was established as a result of the United States' adoption of the Convention on Contracts for the International Sale of Goods ("CISG"), the Bankruptcy Court determined that the application of the UCC would be improper.

## II.   DISCUSSION

### A.  Standard of Review

In reviewing the Bankruptcy Court's judgment on appeal, this Court reviews the Bankruptcy Court's legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for an abuse thereof. *See In re Heritage Highgate, Inc.*, 679 F.3d 132 (3d Cir. 2012); *In re Grayboyes*, No. 05-1780, 2006 WL 437546, at *3 (E.D. Pa. Feb. 22, 2006).

### B.  Analysis

A claimant seeking allowance and payment of an administrative claim must establish that: (1) the vendor sold goods to the debtor; (2) the goods were *received by the debtor* within 20 days prior to the filing; and (3) the goods were sold to the debtor in the ordinary course of business. *In re Goody's Family Clothing, Inc.*, 401 B.R. 131, 133 (Bankr. D. Del. 2009).

Appellants contend that because the Bankruptcy Code does not define the word "receive," the Court must look to applicable non-bankruptcy law for an express definition of the term. Appellants maintain that the Uniform Commercial Code ("UCC") definition of "receipt" as taking "physical possession of [the goods]" should apply. UCC § 2-103(1)(c). If the UCC were to apply, then Appellee received the goods on the dates it took physical possession of the goods. Because those dates were within 20 days of Appellee's bankruptcy filing, the claims would qualify for administrative priority.

Appellee asserts that the controlling authority is international commercial law because the parties did not elect to exclude its application in their contract. Pursuant to the accepted terms of international trade, in a sale which occurs free on board ("FOB") in the country of origin, the property is transferred to the buyer once the goods are put on the ship. If international trade law were to apply, then Appellee received the goods in question on a date which was more than 20 days prior to bankruptcy, precluding the claim from administrative expense status.

"Where Congress has chosen to exercise its authority, contrary provisions of state law must accordingly give way." *In re Roach*, 824 F.2d 1370, 1373 (3d Cir. 1987) (citing *Johnson v. First National Bank of Montevideo*, 719 F.2d 270, 273 (8th Cir. 1983)), *cert. denied*, 465 U.S. 1012 (1984). The Supreme Court has explained that uniform federal law displaces state law as to matters involving international relations. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 425 (1964). As such, state law is preempted when it is inconsistent with or impairs the policy or provision of a treaty. *U.S. v. Pink*, 315 U.S. 203, 231 (1942); *see also Nielsen v. Johnson*, 279 U.S. 47, 52 (1929) (explaining that the meaning of a treaty provision is not restricted by possible conflict with state legislation).

### i. Convention on Contracts for the International Sale of Goods

The treaty upon which the Bankruptcy Court based its decision is the CISG[3], a treaty that applies to "contracts of sale of goods between parties whose places of business are in different States. . . [w]hen the States are Contracting States." CISG Art. 1(1)(a). The Senate ratified the CISG on December 11, 1986 and it became effective on January 1, 1988. *Forestal Guarani v. Daros Int'l Corp.*, 613 F.3d 395, 397 (3d Cir. 2010). China is also a signatory to the convention. *See Maxxsonics USA, Inc. v. Fengshun Peiying Electro Acoustic Co., Ltd.*, No. 10 C 1174, 2012 WL 962698, at *4 (N.D. Ill. Mar. 21, 2012). As incorporated federal law, the CISG governs a dispute as long as the parties have not elected to exclude its application. CISG Art. 6. Because there is no indication in the record that the parties elected to exclude the application of the CISG, the Bankruptcy Court was correct in finding that the treaty applies to this dispute.

The Bankruptcy Court notes that the treaty does not define the word "receive." However, Article 7(2) of the treaty provides that:

> [q]uestions concerning matters governed by this Convention which are not expressly settled in it are to be settled in conformity with the general principles on which it is based or, in the absence of such principles, in conformity with the law applicable by virtue of the rules of private international law.

CISG, Art. 7(2).  The CISG goes on to provide:

> the parties are considered, unless otherwise agreed, to have impliedly made applicable to their contract or its formation a usage of which the parties knew or ought to have known and which in international trade is widely known to, and regularly observed by, parties to contracts of the type involved in the particular trade concerned.

*Id*. Art. 9(2). This interpretive approach has been memorialized by the International Commerce Commission ("ICC"), a non-governmental organization and attendee at the Convention.

---

[3] 19 I.L.M. 668 (1980), 1980 WL 115526 (I.L.M.)

### ii. Definition of "Receive"

The ICC has defined a number of commercial terms, referred to as "Incoterms," which are commonly used in international trade. Incoterms "are a set of three-letter trade terms reflecting business to business practice in contracts for the sale of goods. The Incoterm rules describe mainly the tasks, costs and risks involved in the delivery of goods from sellers to buyers." Incoterms ® 2010, Introduction; *see also Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 380 n.5 (5th Cir. 2002) (explaining that Incoterms are standard trade definitions used in international sales contracts); *Hanwha Corp. v. Cedar Petrochemicals, Inc.*, 760 F. Supp. 2d 426, 428 n.1 (S.D.N.Y. 2011) ("Generally speaking, 'Incoterms' is a set of standard trade terms, developed by the International Chamber of Commerce, meant to provide parties to international contracts for the sale of goods with clear definitions of respective rights and liabilities with regard to the shipment of the goods.") The ICC's Incoterms are incorporated into the CISG through Article 9(2).

Though ICC's Incoterms do not explicitly define the word "receive," the definition of "FOB" or "free on board" aids in interpretation.[4] The term "free on board" is defined in the Incoterms as:

> [m]ean[ing] that the seller delivers the goods on board the vessel nominated by the buyer at the named port of shipment or procured the goods already so delivered. The risk of loss of or damage to the goods passes when the goods are on board the vessel, and the buyer bears all costs from that moment onwards.

Incoterms ® 2010, 87 (emphasis added).

In short, once the seller delivers the goods, the risk of loss or damage passes to the buyer and the goods are constructively received by the debtor. Therefore, the relevant date for purposes

---

[4] In particular, the Fujian shipment was FOB Xiamen and the Haining shipment was FOB Shanghai.

of determining whether claims are eligible for administrative expense priority is the date on which the goods were shipped. The goods at issue in the Haining claim were shipped from Shanghai and received by Appellee on May 26, 2013, and the goods at issue in the Fujian claim were shipped from Xiamen and received by Appellee on May 17, May 31, and June 7, 2013. These dates all occurred more than 20 days prior to Appellee's bankruptcy filing on June 3, 2013, therefore the Bankruptcy Court properly concluded that Appellants' claims do not warrant an administrative priority.

### III.   CONCLUSION

For the reasons explained herein, Appellee did not receive the goods in question within 20 days of its bankruptcy filing, precluding the claims from administrative expense status under 11 U.S.C. § 503(b)(9). Accordingly, the judgment of the Bankruptcy Court is AFFIRMED. An appropriate Order follows.